# EXHIBIT A

CONTRACT OF SALE OF RESIDENTIAL PROPERTY: Agreement to sell residential property.

CONSULT YOUR LAWYER BEFOR SIGNING THIS CONTRACT.

NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION. This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply.

CONTRACT OF SALE, made as of August , 2022 between 6 Turtle Knoll, LLC

Address: P.O. Box 405, Blooming Grove, NY 10914

hereinafter called "Seller" and

*  Joel Levi and/or his assigns provided Joel Levi is ~~a member/shareholder~~
a majority shareholder

Address:

hereinafter called "Purchaser."

The parties hereby agree as follows:

1. Premises. Seller shall sell and convey and Purchaser shall purchase the property, together with all buildings and improvements thereon (collectively the "Premises"), more fully described on a separate page marked "Schedule A," annexed hereto and made a part hereof and also known as:

Street Address: 6 Turtle Knolls, Monroe, New York 12775 Section 40 Block 1 Lot 42.1

Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

2. Personal Property. This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will be paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject. They include, but are not limited to: As is.

Excluding: Furniture and household furnishings

3. Purchase Price. The purchase price is $1,500,000.00

payable as follows:

1

    a. on the signing of this contract, by Purchaser's good check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract (the "Down payment Non-Refundable"):
$150,000.00

    b. balance at Closing in accordance with paragraph 7: $1,350,000.00

4. Down payment in Escrow. (a) Seller's attorney ("Escrowee") shall hold the Down payment in escrow in a segregated bank account at Webster Bank, located in Florida, New York, until Closing or sooner termination of this contract and shall pay over or apply the Down payment in accordance with the terms of this paragraph. Escrowee shall hold the Down pyament in a non-interest-bearing account for the benefit of the parties. If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Down payment and the party receiving the interest shall pay any income taxes thereon. If interest is not held for the benefit of the parties, the Down payment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Down payment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the Down payment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 30 days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within such 30 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, non appealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Down payment and the interest thereon with the clerk of a court in the county in which the premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

The parties acknowledge that, Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally (with right of contribution) agree to defend (by attorneys selected by Escrowee), indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee.

Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from acting upon the advice of such counsel.

Escrowee acknowledges receipt of the Down payment by check subject to collection and Escrowee's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this contract.

Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Down payment or any other dispute between the parties whether or not Escrowee is in possession of the Down payment and continues to act as Escrowee.

2

The party whose attorney is Escrowee shall be liable for loss of the Downpayment.

5. Acceptable Funds. All money payable under this contract, unless otherwise specified, shall be paid by:

Cash, but not over $1,000.00;

Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York, unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon reasonable prior notice (by telephone or otherwise) to Purchaser;

As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of $500.00; and

As otherwise agreed to in writing by Seller or Seller's attorney.

\* 6. Mortgage Contingency – NONE. ~~notwithstanding Seller will cooperate with Purchaser if he elects to finance this purchase, however, this contract is not subject to Purchaser's receipt of a mortgage commitment, appraisal, inspection and Seller cannot terminate if they do not get financing. If Purchaser proceeds with trying to obtain financing it must be completed within 30 days of Bankruptcy Court approval or Purchaser must proceed with CASH. For all intents and purposes this is a cash transaction.~~

\* 7. Permitted Exceptions. The Premises are sold and shall be conveyed subject to:

Zoning and subdivision laws and regulations ~~provided that they are not violated by the existing buildings and improvements erected on the property or their use~~;

Consents of record for the erection of any structures on, under or above any streets on which the Premises abut; Provided same do not render title unmarketable.

Encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway; Provided title insurance company insures that same may remain so long as they shall stand.

Real estate taxes that are a lien, but are not yet due and payable; and

The other matters, if any, including a survey exception; Provided same do not render title unmarketable. Except that the premises shall not be subject to any easements whatsoever.

8. Governmental Violations and Orders. (a) The Premises are sold as-is. Seller shall furnish Purchaser with any authorizations necessary to make searches that are for informational purposes only.

9. Seller's Representations. (a) Seller represents and warrants to Purchaser that:

a. The Premises abut or have a right of access to a public road;

b. Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;

3

    c. Seller is not "foreign person," as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA");

    d. The Premises are not affected by any exemptions or abatements of taxes other than basic star and

    e. Seller has been known by no other name for the past ten years, except

Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.

Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

10. Conditions of Property. Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" in their present condition and state or repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of closing (except as otherwise set forth in paragraph 14(d), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract. Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before closing. (And within 72 hours prior to closing and possession, if later

11. Insurable Title. Seller shall give and Purchaser shall accept such title as shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, as chosen by Purchaser provided they are licensed in New York, subject only to the matters provided for in this contract.

12. Closing, Deed and Title. (a) "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a Bargain and Sale Deed With Covenants Against Grantor's Acts in proper statutory short form for record, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall contain a covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.

13. Closing Date and Place. Closing shall take place within 30 days from Bankruptcy Court approval, at Seller's Office or a lender in Orange County. If closing takes place outside of Orange County then Purchaser to pay Seller's attorney $250.00 per hour for each hour commuting to and from closing. Purchaser may elect to have closing as a mail away/escrow closing.

14. Conditions to Closing. Seller represents and this contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:
The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.

    a. The delivery by Seller to Purchaser of a valid and subsisting Certificate of Occupancy or other

4

required certificate of compliance prior to closing, or evidence that none was required, covering the buildings(s) and all of the other improvements located on the property as presently exists, authorizing their use as a single family dwelling at the date of Closing.

b. The delivery by Seller to Purchaser of a certificate stating the Seller is not a foreign person, which certificate shall be in the form then required by FIRPTA, or a withholding certificate from the I.R.S. If Seller fails to deliver the aforesaid certificate or if Purchaser is not entitled under FIRPTA to rely on such certificate, Purchaser shall deduct and withhold from the purchase price a sum equal to 10% thereof (or any amount required by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.

c. The delivery of the Premises and all building(s) and improvements comprising a part thereof in broom clean condition, vacant and free of tenancies as of the date of closing, together with keys.

d. All plumbing (including water supply and septic systems, if any), heating and air conditioning, if any, electrical and mechanical systems, equipment and machinery in the building(s) located on the property and all appliances which are included in this sale being in the same condition as when first viewed.

e. If the Premises are a one or two family house, delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke detecting alarm device or devices.

f. The delivery by the parties of any other affidavits required as a condition of recording the deed.

15. Deed Transfer and Recording Taxes. At Closing, certified or official bank checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by law or by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

16. Apportionments and Other Adjustments; Water Meter and Installment Assessments. (a) To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing, or possession if later:
(i) Taxes, water charges and sewer rents (if any), on the basis of the fiscal period for which assessed or as is the custom for the county where the property is located, Orange County adjusts school tax July 1-June 30; (ii) Fuel, if any.

b. If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately preceding fiscal period applied to the latest assessed valuation.

c. If there is a water meter on the Premises, Seller shall furnish a final reading to a date not more than 30 days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.

d. If at the date of Closing the Premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or

5

prior to Closing.

e. Any errors or omissions in computing apportionments or other adjustments at Closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.

17. Allowance for Unpaid Taxes, etc. Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less than five business days after Closing, provided that official bills therefore computed to said date are produced at Closing.

18. Use of Purchase Price to Remove Encumbrances. If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form acceptable to the title company so as to omit the exception and sufficient to satisfy such liens or encumbrances or record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient moneys with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear of such matter. Upon reasonable prior notice (by telephone or otherwise), Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

19. Title Examination; Seller's Inability to Convey; Limitations of Liability. (a) Purchaser shall order an examination of title in respect of the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent of such title company promptly after the execution of this contract or, if this contract is subject to the mortgage contingency set forth in paragraph 8, after a mortgage commitment has been accepted by Purchaser. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof. All remains subject to #8 of this contract.

(i) If at the date of Closing Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called "Defects"), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other than those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then, except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract; (ii) The Seller shall not be obligated to remove a defect if the cost to do so exceeds $1,000.00. If Seller elects to take action to remove, remedy or comply with such Defects, Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 60 days in the aggregate (but not extending beyond the date upon which Purchaser's mortgage commitment, if any, shall expire), and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. If for any reason whatsoever, Seller shall not have succeeded in removing, remedying or complying with such Defects at the expiration of such adjournment(s), and if Purchaser shall still be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date; (iii) notwithstanding the foregoing, the existing mortgage (unless this sale is subject to the same) and any other matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.

6

If this contract is canceled pursuant to its terms, other than as a result of Purchaser's default, this contract shall terminate and come to an end, and neither party shall have any further rights, obligations or liabilities against

or to the other hereunder or otherwise, except that: (i) Seller shall promptly refund or cause the Escrowee to refund the Down payment to Purchaser.

20. Affidavit as to Judgments, Bankruptcies, etc. If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller in form acceptable to the title company so as to omit the exception.

21. Defaults and Remedies. (a) If Purchaser willfully defaults hereunder and does not cure within a reasonable notice to cure period, Seller's sole remedy shall be to receive and retain the Down payment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Down payment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.
    (b)    If Seller defaults hereunder, Purchaser shall have such remedies a Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

22. Purchaser's Lien. All money paid on account of this contract, and the reasonable expenses of examination of title to the Premises and of any survey and survey inspection charges, are hereby made liens on the Premises, but such liens shall not continue after default by Purchaser under this contract.

23. Notices. Any notice or other communication ("Notice") shall be in writing and either (a) sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or

Delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant to this paragraph. Each Notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered, or

Each Notice by fax shall be deemed given when transmission is confirmed by the sender's fax machine. A copy of each Notice sent to a party shall also be sent to the party's attorney. The attorneys for the parties are hereby authorized to give and receive on behalf of their current clients all Notices and deliveries. This contract may be delivered as provided above or by ordinary mail or overnight delivery. Any notice alleging default must be to the attorney for the respective parties by personal delivery or overnight mail by a recognized national courier.

\*    24. No Assignment. This contract may be assigned by Purchaser to an Entity that Purchaser is a **major shareholder/member. without he consent of the seller and proof of funds showing cash purchase**

25. Broker. Seller and Purchaser each represents and warrants to the other that it has not dealt with any real estate broker in connection with this sale other than NONE. Seller shall pay Broker any commission earned pursuant to a separate agreement between Seller and Broker. Seller and Purchaser shall indemnify and defend each other against any costs, successful claims and expenses, including reasonable attorneys' fees, arising out

7

of the breach on their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur, the termination of this contract.

26. Miscellaneous. (a) All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

    b. Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributes, legal representatives, successors and permitted assigns or the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

    c. Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.

    d. The captions in this contract are for convenience of reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this contract or any provision hereof.

    e. This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.

    (c) Seller and Purchaser shall comply with IRC reporting requirements, if applicable.
    a. This subparagraph shall survive Closing.

    (d) Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.

    (e) This contract is intended for the exclusive benefit of the parties hereto and, except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by, any other person or entity.

    (f) If applicable, the complete and fully executed disclosure of information on lead-based paint and/or lead-based paint hazards is attached hereto and made a part hereof.

    (g) Seller will give a $500 credit at closing instead of providing a Property Disclosure Form.

    (h) Seller to be allowed 90 days from date of closing to Hold-Over.

    (i) The obligation of Seller and Purchaser to comply with and perform under this Contract is further expressly conditioned upon the issuance of an order by the United States Bankruptcy Court for the Southern District of New York (1)

8

approving the compliance and performance by Seller under this Contract, (2) barring forever any person from asserting against the Purchaser, their successors and assigns, or against the Unit, any liens, interests, claims or monetary encumbrances held by such persons against the Debtor and, (3) if so requested by Seller, allowing the Seller not to pay at closing any sums to remove, remedy or comply with liens, claims or monetary encumbrances against the Debtor on the Property and instead such liens, claims and monetary encumbrances are to attach to the proceeds of the sale (the "Sale Order"). The obligation of the Seller to comply with and perform under this Contract is further expressly conditioned upon, (i) prior to the Sale Order, the Seller not having received and accepted a higher or better offer for the Property, and (ii) the Seller being satisfied that any conditions for sale established by said court and by the United States Bankruptcy Code or other applicable law have been met. If the Sale Order is not obtained, a higher or better offer is received and accepted by the Seller, or other conditions for the sale are not met to Seller's satisfaction (other than because of a default under this Contract by the Purchaser), then the Purchaser shall be entitled to a refund of the Contract Deposit together with any interest accrued thereon. Upon any such refund, or tender of any such refund, this Contract shall terminate and come to an end.

IN WITNESS WHEREOF, this contract has been duly executed by the parties hereto.

_____          _____
Buyer- Joel Levi                               Seller- 6 Turtle Knoll, LLC
                                                       Pamela Lee, Managing Member

_____          _____
Buyer-                                              Seller —

Purchaser Attorney: Benzion Frankel, P.C.          Seller Attorney: Richard Croughan
1716 Coney Island Avenue, Suite 400                210 Main St
Brooklyn, New York 11230                           Goshen, NY 10924
Email: bfrankel@bzfpc.com                          Email: riclaw1227@yahoo.com

9